Good morning, Your Honors. May it please the Court, my name is Aaron Markowitz and I, along with my co-counsel Joshua Markowitz, will be arguing on behalf of the appellants Cedarsole Warren and Robert and Barbara Dorroh. The appellants would like to reserve two minutes for rebuttal. As the Court is aware from reading the briefs, there is a variety of arguments that are being made by both sides, but appellants believe there's really two key issues here, and the first one is the question of whether the trustee destroyed the claims for those damages that are purely personal to Warren when he made the assignment to the Dorrohs, and the second one is if there was a waiver of those claims, whether the appellee was neither a party to the assignment or a third-party beneficiary of the assignment agreement can force that waiver over the joint objection of the parties. Can I ask just kind of a basic question? I understand the argument that under California law you can't assign these purely personal claims. Yes. But the transfer from Mr. Warren to the trustee is not affected by that. The claims do go to the trustee. Yes. Okay. Thank you. Yes. And once going to the trustee, what we're faced with, because my colleague and I, based on our questions, seems we're in the same boat, once they can be transferred to the trustee, though personally, though personal claims, then what you're arguing is they can't be transferred by the trustee. No. Our argument is that they can be, well, both parties agree that those claims, all of the claims, transferred to the trustee in bankruptcy. I understand. That's not an issue. By operation of bankruptcy law. By operation of bankruptcy law, all parties agree that all of those claims were filed as part of the original lawsuit. The question is … In fact, they were in the schedule, right? The claim itself was in the original schedule. It didn't break down as to the individual claims as between economic damages and non-economic damages, but all of those claims were broken down and included in the original complaint. So all parties agree that they were all in the lawsuit to begin with. The question is, what happens after the lawsuit was filed? Now, according to the appellee and the district court, when the assignment went to the Doros, the non-personal rights, the economic claims, the rights to the economic claims, transferred to the Doros, and those that were purely personal to Warren were destroyed. They disappeared. Now, appellants respectfully disagree and would ask that that order be reversed. Now, the appellants would note that neither the Purcell case nor the Cain case, the two cases cited by both parties which are particularly on point, or really any other court applying California law, has ever found that such a complete assignment would have this effect of the destruction of these rights. What is important in the Purcell case was that the Purcell case was what we would call, what both parties seem to be calling, a complete assignment. In Purcell, the plaintiff there had assigned, quote, any and all causes of action which he has or may have now or in the future against Colonial with respect to all the matters arising out of said accident and the claims incident thereto. Not too different from the assignment here. That a complete assignment. But even though that language is what we would call a complete assignment here, it was never mentioned, complete or partial assignment by the Purcell court. They made no distinction between complete and partial. The Purcell court, in fact, went on to look at whether or not it's a single or two causes of action. Now, of course, if the complete assignment disposed of the matter, then they wouldn't have had to get that far. The number of causes of action would be irrelevant if the fact that all of those causes of action were assigned would be the end of the question. But the Purcell court went on to the number of causes of action because it didn't find this distinction between complete and partial assignments to be of, you know, of any importance. I hesitate to stop your argument because I think it's helpful. My worry is that your opponent suggests that when the assignment was made and or when the bankruptcy case closed, having not done anything about it, Warren waived his rights. Okay. Well, the while the those rights and again the scheduled claim, right? So the bankruptcy closes without administration of a scheduled claim. It's abandoned, right? It's abandoned to Warren. So I guess they're arguing it was administered in some way. Yeah. And again, that goes back. Is that what the opponent's arguing? They are. You understand that? Yeah, they are arguing that. But what they're arguing is, is that it was administered by being waived, which circles us back to the same question as to whether or not under Purcell or Kane or any law on assignment or any law relating to the assignment of causes of action for bad faith, whether there is a waiver such that those rights are destroyed. It's the appellant's position that they weren't destroyed, that they actually still existed. The Doros substituted into the action. Now, what's important there is on rule under Rule 25, as both parties agree, Rule 25 has no substantive effect on rights. So when the Doros substituted into the action, it didn't affect those claims. Those claims still existed. Those claims were in the action after the Doros substituted in. They were still in the action after the bankruptcy estate closed. And when it closed, those, by a matter of 544C of the Bankruptcy Code, they automatically were abandoned to Warren. Then Warren, after that abandonment... Warren ever asked for them to be abandoned to him? He doesn't have to. Again, it's automatic under 544C. I understand he doesn't have to. My worry is, frankly, and that's why it's of some... I'm stopping you. It seems to me that everybody goes through this under the assumption, even Warren, that he is having all these claims transferred, and then all of a sudden he may not have had them transferred, and now he wants to say, okay, based on bankruptcy law, they're abandoned to me. He never asked for abandonment. I mean, even in the best situation, it seems to me he should have asked the bankruptcy court to abandon them to him, rather than just rely on a part of the statute that says they're automatically abandoned. How do you respond to that? Well, to say that it might have been better for him to ask for it. Well, frankly, if Warren knew he had these claims, and all these things happen, and he does nothing about it, it seems to me their argument for waiver is far better. I would disagree with that in this way, in that their argument for waiver is based on something that occurred at one particular time, and not something that happens at any other time. And here's, I think, the key to it. Well, you say that, but there are, in fact, two different situations. One is when they were assigned, this claim was assigned. Two is when it was closed. Both, it seems to me if Warren was suggesting that he had for waiver is enhanced. But if we're talking about at the time of the closing of the bankruptcy estate, then at that point, the debtor, his interests are in just taking whatever is left in the estate. For him to say, well, here's another asset, isn't necessarily to his advantage. Now, we would note, of course, this was a surplus estate. And so there isn't anything that would, that any other creditors can come forward and say, well, that's not appropriate. The trustee can't come forward. So this is a surplus estate. He has really no reason to say, well, I want what's left in my estate back. That's just an automatic of bankruptcy law. So in a surplus estate, for him to not come forward and say, well, I want everything left over, he automatically gets what's left over. Let me just review the timeline. Trustee files the suit. So trustee owns everything, all the kinds of claims when he files the suit. And he actually meant he, so he sues on the claims are there. And so it's when Doros get an assignment from the trustee after they've paid whatever they have to bet, your opponent argues the waiver occurred by the trustee assigning it to Doro. Yes. All right. And again, that goes back to And then once the state, so the closing must be, must have been shortly after that. It wasn't too far, too long after that. I get what's happening. Yeah. And then, and then right after I don't get it's California insurance law and why this is a big deal. But anyway. Okay. And then, and then right after the closing is when, you know, we have Warren filing his Rule 25 motion asking to be brought back in. And again, that doesn't have any substantive effect. Those rights, those claims that were originally filed, we would posit that they weren't destroyed as a result of the waiver to the Doros. The filing of the Rule 25 motion by the Doros to substitute in didn't have any substantive effect. The claims remained the same. There was no Rule 12b6 motion filed by the appellants. There was no motion for summary judgment to try to remove these claims. They never once objected to the Doros substituting in to prosecute all the claims that existed, including those punitive damages and non-economic claims. I don't think this has anything to do with the case other than I don't understand this. The big sin here was not making the check for $15,000 directly to Warren? To Doros. To Doros. Okay. That was, and not joining in the workman's comp possible payor? They wanted to join them. They wanted to join them instead of making a single check, and that was the sin. That was what they claimed. I know. I'm being humorous here. That was good. It is an alleged sin for sure. Yes. But the Doros were willing to buy that claim for a lot of money, and the insurance company  At which time? Early on, when the bankruptcy court was considering these things. More than $15,000. Yes. Okay. I just wanted to understand it. Thank you. Okay. All right. Thank you, Your Honor. And so, as we were saying, those claims were in there. They remained in there. They weren't removed by 12B6. They weren't removed by summary judgment. They remain in, and so questions of the statute of limitations doesn't apply again because it was filed originally. And I'd like to turn over briefly to my co-counsel to address the second issue. Good morning. We're pleased it's the Court. Joshua Markowitz on behalf of the Doros. And I think some of the questions that the Court was going at is the effect of the assignment to the Doros. Now, there are situations where the judgment creditor, the Doros, would want to take the entire cause of action, even though they can't pursue it because they don't want the judgment debtor, the insured, to be involved in the lawsuit. There's issues of control. They're an intermeddler. There may be reasons why Doro would bargain for a complete assignment, even though we can't prosecute that claim. But that isn't what happened here. Here, the Doros do want Warren to be a party because it does affect the damages available under California law, and it is a very complicated issue. But there is a good reason why Warren needs to be involved in this action. So when the Doros, to the extent that assignment can be deemed waiver, it would only be — Can you just explain that to me? Sure. The Doros want Warren in. That will up the damages because he's got personal damages, and they have some other deal with Warren to get some of this money. Correct, Your Honor. Okay. All right. Thank you. And it helps for settlement. There's a lot of good reasons for that. Well, it helps for settlement for sure. It always helps to have him at the table. It does. But putting that aside, if that assignment did potentially cause a waiver, it was a waiver for the Doros' benefit. The Doros, I can assure you, at no time bargained for the benefit of Dearbrook Insurance. They never intended to benefit Dearbrook Insurance with anything they've done. So to the extent we bargain for a waiver, we can, through novation, release that waiver. It's a situation — two tortfeasors, a plaintiff settles with one, releases that one. The other tortfeasor can come in and say they were released because they didn't pay any consideration and it wasn't intended for their benefit. So they can come in and say, ah-ha, there's been a release. Therefore, you can't sue us. If a settlement release was drafted with that one tortfeasor and it was drafted overbroad and it said, we release everybody, and it's signed and it's executed, and then both parties say, whoops, we messed up, we didn't intend to release this other party, and redraft it so it clearly only releases one party, the party who wasn't a party to that release didn't pay any consideration and was not an intended beneficiary can't enforce that release. That's the situation we have here. To the extent the assignment was a waiver, it was for the Doros benefit, and the Doros have executed a novation saying any interest that was assigned to us is assigned back. And I think when the California law talks about no assignment, it's better understood as it can't be prosecuted by the assignee. We cannot prosecute the action against Dearbrook, but they can assign it to us and we can assign it back. Dearbrook has two substantive rights under California law. One, they only respond to personal tort liability to their insured, and two, not to have to face separate actions for the personal and the contractual. That is the rights. They can stand up in court if either of those are violated and say, no, that person wasn't our insured, we don't have to respond to them, or no, we don't have to respond to two causes of action. But that isn't the situation here. There is the personal cause of action is being pursued by their insured, and there is a single action for both the personal and the contractual. So Dearbrook has no basis to object. Could the Doros, if the Doros chose not to allow Warren in based upon the assignment, I think we could have objected and kept them out based on the words of the assignment. But Dearbrook, a stranger to that assignment, a party who has never intended to be benefited by that assignment, lacks that ability to object. And I do see that I'm over. I do appreciate that. I just wanted you to get your last strong effort made. Thank you. I very much appreciate that. You should respond. All right. May it please the Court. John Brooks, the athlete, Dearbrook. I think that there is a mistaken premise that impacts a couple of the arguments that you've just heard and that are in the papers. And I'd like to take a minute to talk about that premise and to show why I believe that it is mistaken. Because it bears upon both the core merits issue here of whether there was a waiver by the trustee, and it also bears upon the threshold issue of whether what the appellants are attempting to do is an impermissible collateral attack upon the bankruptcy court's orders. Well, try the first one. I think that's your stronger point. The premise appears to be this. And it's been articulated in different ways, but just boiling down to plain English. The appellants appear to be saying that there's no good reason why the trustee would have given up the purely personal claims without receiving any compensation for them, that that makes no sense, and therefore the court should not, or the court below, should not have concluded that that's what the trustee intended to do. That he intended to give those things up. And based upon that premise, there's no good reason to completely abandon the bad faith claim. I shouldn't use the word abandon because of the double meaning. To completely give up. That's not the best word, yeah. Yeah. To completely give up the bad faith claim. But there is a good reason for that. And I want to explain why it made perfect sense for the trustee to completely give up the bad faith claim, to administer it in a way that did not preserve the unassignable purely personal claims. I'm interested. Okay. I am, too. I'm not sure he could, even if he had a good reason. That's the law. That's the worry I have. But I'm glad to hear the reason. Give us the dynamics here. The trustee's duties are to the creditors, as everyone knows, to find a way to administer the estate to take care of the creditors. And that is what he was able to do by his complete assignment of the bad faith claim. He got enough money from the Doros, who in exchange for that assignment withdrew their claims, to take care of all the creditors. He got enough money to pay all of the priority claims of trust administration and to pay 100 cents on the dollar all the claims of the various creditors in the case. There was, first of all, no need, and second of all, a good reason. I'll explain both. Not to keep alive and to continue to prosecute the purely personal claims. Let me – there's two parts to that. I want to explain both of them. Why is there no need to keep alive the purely personal claims? Because the trustee had already received enough money from the assignment to take care of all the creditors. He didn't need to continue prosecuting purely personal claims to bring more assets in to the estate. He had done his job by the creditors. No need to do it. Why would he not want to do it? If he – if the trustee were, instead of having executed a complete assignment which says, I'm walking away from any possible interest in this case, if he had executed a partial assignment that said, I'm going to give the economic damages claims to the Doros, and I'm going to keep the purely personal claims for the estate to administer, he would have had to administer them. He would have had to have continued prosecuting that case, which would have – Why couldn't he abandon them as they suggest he did? Well – He thinks they're worth nothing. He thought they were worth nothing. He thought they weren't worth a dime. Why would he do that? Why did he care? If he didn't have the right to do it, number one, which is what California law would suggest, but the second is, if he doesn't think they're worth anything, he can abandon them to whoever he wants to. For him to keep this case alive and not to split the claims, which is what happened when he subbed out of the case and stopped prosecuting them, he would have either, in his own capacity, had had to continue prosecuting the claims, which would have been an expense to the estate, which would have meant he would have had to get more money from the Doros, instead of $215,000, a higher amount of money, because his priority claims, his cost of administration, are something he's got to continue to defray if he keeps litigating. I think your first argument contradicts your second one. He's got enough money for the creditors. He doesn't think this thing is worth much, so he gives it up and closes the estate. He doesn't do anything else with it. Even if you look at it from that perspective, there's still no benefit to the creditors for him to keep this claim alive, and so he didn't. By executing a complete assignment, which says, I'm giving up everything that I have, he was evidencing his intent to administer this claim in a way that did not preserve any portion of it. What's my best case for the idea that the trustee, under any circumstances, could assign the personal claim? What's my best case? Because I tried to find a case for that. There is no case for it. The trustee cannot. Then why should I try to say California law, California, you don't know what you're talking about here. We're going to allow the trustee to assign it, because the only way your argument works is either they waive it or they assign it, and I don't find any way to find the assignment, and then I tried to find a waiver, and for the reasons counsel suggested, I think that's a tough argument. The reason that there's a waiver is that the trustee had a choice of how he's going to administer this bad faith claim. He could have assigned just the assignable portions and shown the intent to preserve the non-assignable portions. He didn't do that. Instead, he did a number of things. One is to execute a complete assignment, which shows no intent to preserve the remaining portions of the claim, which either would have had to continue to be prosecuted or, at a minimum, would have involved further expenses of administration to prosecute a motion to abandon under 554A, to abandon to... It sounds like such a big deal to me. It would have been an additional expense and not in the interest of creditors, because that would have depleted the $215,000 of funds. If it happens automatically, why doesn't he have to do it? I mean, he doesn't administer it. It's automatically abandoned. So that doesn't sound, like, very expensive to me. It's... The, um... My worry is that it didn't seem like the trustee, who should understand this to some extent, knew exactly what he was transferring. I don't understand what the basis for that assumption is. I don't think there's any evidence that anybody ever believed... Well, under California law, he can transfer. He can... Under California law, an attempt to transfer a non-assignable claim is void ab initio. That's one point on which I think everybody agrees. Right. So the question to be asked from that is, when you do execute a complete assignment and you don't attempt to retain to yourself anything, what's the conclusion to be drawn from that? And if you look at the bankruptcy trustee's final report and final account, when in Table 1 or Form 1 in those accounts, he described what he had done with the assets, there's a column where he could have said, yes, I am abandoning this under 554C, which is the implication of the inference that the appellants asked the court to draw. And there's a code for that. It says DA equals 554C. And he didn't do that. If it had been his intent to do that, that's where he would have indicated it. Instead, he indicated that he had fully administered the claim and there was no remaining value in it. When there are assets in the estate that are left in the estate after the bankruptcy trustee is finished and by error or overlooking, that asset has not been given to anyone, what is the situation? If I understand the question, if there have been scheduled assets that the... Correct, which this was scheduled. I agree, which due to an empty head but pure heart, the trustee just forgot about them. If you characterize it the way you want to, maybe we have more of those in Idaho than you do in California. But there are a few trustees who don't exactly transfer out all of the assets or don't deal with them because there are so many they can't, they don't get them all taken care of. What is the result? At that point, the sole thing that happens is the debtor goes back and asks for it to be abandoned, doesn't he? Well, I think even more so. In the situation you've posited, is a forgotten, an asset forgotten by the trustee, it's abandoned. I'm just trying to put this in the situation which might be and give you a chance to answer it. Right, right, and that's what I'm trying to do. There would be situations where a forgotten asset would be abandoned by Operation 554C, but apply to this particular case where your best evidence and your only evidence of the trustee's intent is what he put on the Form 1 in the final report, in the final account, where he did not say I, where he specifically discussed the bad faith claim. He specifically did not say I'm abandoning any portion of this under 554C, and instead he said I've fully administered this and there's no value remaining in the state. In that situation, the only way that you get to the factual conclusion that there was something the court forgot about, not the court, the trustee, is to indulge in the assumption or presumption that the trustee was just making a mistake of law and thinking that he had assigned away something which everybody agrees he couldn't possibly have assigned away. I don't think that it's appropriate, I would suggest that it's not appropriate, to assume that the trustee did not know what he was doing when he specifically listed on these forms the asset and he told the bankruptcy court here's what I've done with the asset, I've fully administered it, there's none of it left. The problem with that is, you know, equally strong on the other side is there are no waivers unless there's really good evidence of a waiver. I mean, waivers aren't something the law just says we can presume this and presume this and therefore we have a waiver. I mean, you either have an express waiver or you have a waiver where somebody relies on it, there's evidence that it happened, there's conduct, you know, you need something to make a waiver, right? When you haven't put I waive on the document, you have to do something that demonstrates waiver. I agree with that. So where's the demonstration that's clear that there was an intended waiver? I believe that it was in, first, the complete assignment which made no attempt to reserve any portion of the claim for the estate, second, in then withdrawing from the prosecution of that claim, and third, in listing in the final report and the final accounting the fact and the belief that he had fully administered that claim and did not preserve any part of it that he intended to relinquish to the debtor. This is consistent with his fiduciary duty to the creditors to do what he needed to do to get enough money to pay their claims, which is what he did. Now, if the trustee should have done something more, should have been more aggressive in preserving these personal claims, that's something that was incumbent upon Mr. Warren, upon receiving the final report, to object to. He had 21 days under the bankruptcy rules from receiving that report. It's on page 52 of the excerpt of record, to raise an objection to it. Form 1 clearly said what the trustee believed he had done with that asset. Warren made no objection to it. And he made no objection and filed no appeal from the subsequent order of the Bankruptcy Court. And now, many years after that's been closed, he's coming back and saying, I've got this asset, I've got this claim, which is inconsistent with what the trustee said that he was doing. Unless you make the assumption the trustee just was making a mistake because he wasn't thinking clearly, those reports and the ensuing order of the Bankruptcy Court ought to be given their final effect. I only have 51 seconds left. I'd like to touch upon another issue. I want to point out the link between the issue of substitution, Rule 24C, and whether that was the right vehicle here, and the statute of limitations issue. In our views, substitution under 24C is not the right vehicle because at the time that Mr. Warren tried to come back into the case, or tried to come into the case, the party from whom he received the assignment, assuming there was one, assuming there was an abandonment, had been out of the case for nine months or something like that. He was not substituting into the case for the party who had the claims. He was trying to intervene into the case for a party who had been out for nine months. It is as if the trustee himself had gotten out of the case and nine months later tried to come back in. It's not a substitution situation. It's more in the nature of an intervention. And why does that matter? Is this just procedural niceties? Not really, because part of the arguments against the statute of limitations issue that have been raised by the Doros work only if this is a substitution. There are some situations where in a substitution context there can be relation back, but those don't apply to an intervention context, because what we have going on here isn't substitution. When you look at the statute of limitations issue, which would be an independent ground to affirm, it should be looked at as if this were the situation. The trustee had dismissed himself out of the case in September of 2011, and nine months later, ten months later, in July 2012, tried to get back into the case. And the question would be, are the trustee's claims now time barred? Well, they would now be time barred, because the statute of limitations expired in December of 2011, and when a party dismisses himself from a case, he doesn't get a claim tolling for the period of time that he was out of the case. He doesn't get a claim relation back. And Mr. Warren's claim should be viewed in the same way. It's not really a substitution. Thank you. We gave you about as much time as we gave them. We'll consider the case submitted. Thank you very much.  Case 1315316 is submitted.
judges: Restani, Schroeder, Smith